IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORMAN  T. MERKEL,

       Plaintiff,

vs.                                                              No. CIV 02-1596 JB/LAM

FERNANDO ABEITA, NICHOLAS
GARCIA, PIERCE AVIATION, INC., JAMES
O. PIERCE and KINNEY MCKINNEY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Abeita's and Garcia's Motion to Dismiss Based on Qualified Immunity, filed September 15, 2003 (Doc. 33).  The Court held a hearing on this motion on March 24, 2004.  The primary issue is whether the Plaintiff, Norman T. Merkel, has shown a genuine issue of material fact, through his allegations and facts in the record, that Abeita and Garcia violated his constitutional rights such that they are not entitled to qualified immunity from this suit.  Because the Court finds that Merkel has not pointed to evidence in the record that the Defendants violated his constitutional rights, the Court will grant the motion.

## FACTUAL BACKGROUND

In the briefing on this motion, the parties provided the Court with a lengthy and detailed description of all facts and circumstances surrounding Merkel's Complaint.  The Court reviewed and considered all of the facts before the hearing on this motion and relied on them in making its detailed oral ruling at the hearing.  See Transcript of Hearing at 48-55 (March 24, 2004).[1]  The Court will

---

[1] The Court's citations to the transcript of the hearing refer  to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

limit its review of the facts in this opinion to those facts which are material to the Court's determination whether the Defendants violated Merkel's constitutional right to freedom of speech.

In 2002, Defendant Fernando Abeita was the Contracting Officer's Representative ("COR") for the United States Bureau of Indian Affairs ("BIA") stationed in Albuquerque, New Mexico. See Declaration of Fernando Abeita ¶ 1, at 1 (executed September 15, 2003). In 2002, Defendant Nicholas Garcia was the Contracting Officer's Technical Representative ("COTR") for the BIA stationed in Ruidoso, New Mexico. See Declaration of Nicholas R. Garcia ¶ 1, at 1 (executed September 15, 2003). Contract No. 1406-00-80-2048, between the United States Department of the Interior and Pierce Aviation, shows Abeita's duties and responsibilities as COR. See Contract No. 1406-00-80-2048 ¶ C7.3, at 25. Garcia's duties as COTR are shown at ¶ C7.2 of the contract. See id. ¶ C7.2, at 25. The contract's purpose was to provide single engine airtanker services ("SEAT") to the BIA's firefighting efforts.

Pierce Aviation hired Merkel as a contract pilot. Pierce Aviation stationed Merkel in Ruidoso, New Mexico, and Merkel had been in Ruidoso approximately three weeks before the incidents arose that brought about his Complaint against Garcia and Abeita ("Individual Defendants"). See Garcia Decl. ¶ 4, at 1.

The Individual Defendants contend that the actions giving rise to this lawsuit began on June 3, 2002 and occurred as follows. On the afternoon or evening of June 3, 2002, Garcia contends that he engaged in a conversation with Merkel in which Merkel was extremely upset about the number of hours he was working and used abusive language toward Garcia. See Garcia Decl. ¶ 7, at 2. At the end of the conversation, Merkel mentioned that he might file a "Safecom" report because he believed the number of hours they were working made the operation unsafe. See id. A Safecom

report is a form that the United States Forest Service fire and aviation management under the auspices of the United States Department of Agriculture used to report any condition observance, act, maintenance problem, or circumstance which has the potential to cause an aviation related mishap. See Declaration of Norman Merkel ¶ 11, at 2 (executed October 20, 2003). There is no evidence that Merkel ever mentioned a Safecom report again or filed one. Later that evening, a fire report came in and Merkel provided air support; afterwards, Merkel yelled at Garcia for the overtime work and, again, used abusive language. See id. ¶ 10, at 3.

On June 3, Garcia spoke with Abeita and informed Abeita of his conversation with Merkel, specifically telling Abeita that Merkel had used abusive language and had been extremely upset and angry. See Abeita Decl. ¶ 5, at 2-3. Abeita told Garcia to forget about what happened and concentrate on managing the operation. See id.

On the morning of June 4, 2002, Merkel entered Garcia's trailer and was again very upset and made personally abusive statements to Garcia. See Garcia Decl. ¶ 11, at 3-4. Garcia again called Abeita to discuss his conversation with Merkel and that he was very upset by it. See id.;Abeita Decl. ¶ 6, at 3. Garcia told Abeita that another pilot and driver had overheard Merkel's statements to Garcia. See Abeita Decl. ¶ 6, at 3.

Abeita then called Kenny McKinney, a Pierce Aviation representative, to discuss Merkel's behavior. See id. Abeita informed McKinney that he thought Merkel's behavior and attitude jeopardized the operation's safety, and that stress must be causing his anger. See Abeita Decl. ¶ 7, at 4. Abeita informed McKinney that he had no authority to specify what action the contractor should take, and his only concern was the operation's safety. See id. There is no evidence in the record that Abeita conveyed to McKinney any concerns about Merkel's statement that he might file

-3-

a Safecom report, or that Abeita mentioned that statement at all in his conversation with McKinney.

See Transcript of Hearing at 36:7 - 40:9.  In fact, counsel for Merkel conceded that there is a gap in the evidence regarding whether anyone transmitted Merkel's Safecom statement to McKinney or anyone at Pierce Aviation:

> THE COURT: But the evidence I have in front of me doesn't show that -- unless I'm missing something, it doesn't show that this discussion between Mr. Garcia and Mr. Merkel about the Safecom was ever transmitted to Mr. McKinney.
>
> MR. SEARS: That is true Your Honor.  I believe as Mr. Hamilton pointed out, Mr. Merkel is not exactly sure what was said between Mr. McKinney and Mr. Garcia, as he was not privy to those conversations.
>
> THE COURT: So the person, though, that's taking the action here against Mr. Merkel, what evidence is there that he took it based upon the Safecom statements?  Isn't that pretty much a gap in the evidence?
>
> MR. SEARS:  It can be considered a gap in the evidence Your Honor[.]"

Id. at 36:8-21.

Abeita then called Bob Carr, Contracting Officer, Office of Aircraft Services, Boise, Idaho, and discussed the entire situation in detail.[2]  See Abeita Decl. ¶ 8, at 4-5.  Abeita reiterated that he was not addressing what action, if any, the contractor should take, but that he was concerned about the operation's safety.  See id.

When Abeita called Garcia back to inform him that Abeita had discussed the matter with McKinney, Garcia told Abeita about another situation that had occurred that morning.  Another call

---

[2] Neither party clearly identifies whether Carr worked for the government or for Pierce Aviation.  Based on Abeita's declaration, the Court could infer that Carr worked for Pierce Aviation. See Abeita Decl. ¶ 8, at 4-5 ("I again stated to Mr. Carr that the government, the BIA, was not in any way addressing what action the contractor should take.").  In either case, however, Abeita did not convey to Carr any concerns regarding Merkel's statement about the Safecom report and there is no evidence in the record that Abeita mentioned the Safecom report at all in his conversation with Carr. See Transcript of Hearing at 36:7 - 40:9.

came in regarding a fire, and Garcia notified both Merkel and another pilot, Carl Ireland, about the fire.  See Garcia Decl. ¶ 11, at 3-4.  Ireland left at 8:04 a.m. and Merkel did not leave for an additional 15-20 minutes, but appeared to Garcia to be walking around his plane and talking to himself.  See id.  Merkel left at 8:23 a.m.  See id.  Garcia told Abeita that he was very concerned about this situation because every minute during a fire is important.  See id.

On the afternoon of June 4, McKinney called Abeita to tell Abeita that he had talked with Merkel and they had both agreed to give Merkel some time off from flying and use Merkel as a relief pilot.  See Abeita Decl. ¶ 11, at 6-7.  Abeita said that was agreeable and then called Carr to inform him of the agreement that Merkel would take some time off and act as a relief pilot.  See id.  In his Declaration, Abeita does not affirmatively state whether he mentioned Merkel's Safecom report statement to McKinney or Carr, but does clarify that he did not have a problem with Merkel's statement:

> It certainly never crossed my mind during my conversations to attempt to affect the rights of Mr. Merkel to free speech in any manner.  When Nick Garcia first advised me that Mr. Merkel stated he was going to file a safecom report I said that was fine. We have always encouraged the filing of safecom reports to help avoid claims of negligence, and I had absolutely no problem with the statement by Mr. Merkel.  It was his abusive language and behavior that was uncharacteristic for him that raised my concerns about stress and safety.

See id. ¶ 13, at 7.

Merkel agrees that he had a conversation with Garcia on June 3, 2002, but denies that he ever used abusive language or behaved in an unprofessional manner towards Garcia.  See Merkel Decl. ¶¶ 22-23, at 4.  He denies that, on the evening of June 3, after the fire alert, he yelled at Garcia.  See Merkel Decl. ¶ 24, at 4.  Merkel denies that he spoke with Garcia on the morning of June 4.  See id. ¶ 25, at 5.  Merkel contends that his behavior in delaying his departure to the fire alert on June 4

involved only the usual pre-flight inspection and that he made a timely departure.  See id. ¶ 26, at 5.

Merkel contends that McKinney did not discuss the situation with him, but rather informed Merkel

that McKinney and James O. Pierce had decided that Merkel needed a vacation and that they were

sending him back to Arizona.  See Merkel Decl. ¶ 37, at 10.  Merkel asserts that it is his belief that

Abeita had a problem with Merkel's intent to file a Safecom report.  See id. ¶ 40, at 11.

Merkel asserts that, on June 4, 2002 McKinney terminated him from his job with Pierce

Aviation.  See id. ¶ 13, at 2.  Merkel contends that McKinney told him he needed a vacation, was

being sent back to Phoenix and Peirce Aviation wanted to retain his services only as a relief pilot.

See id. ¶ 14, at 2.  Merkel refers to the relief pilot position as a "demotion."  See id. ¶ 16, at 3.

The Defendants contend that McKinney did not terminate Merkel.  See Deposition of Norman

Merkel at 79:10-18 (taken November 12, 2003)("Q: So did Mr. McKinney ever say that you were

fired from your job?  A: No.  Q:  Then why -- so then, in fact, you said you weren't willing to go back

to do that job?  A: Right.  Q:  So you essentially quit your job?  A:  Well, I quit because of the

interference of Fernando Abeita and Nicky Garcia.").  The Defendants also contend that there is no

evidence in the record that the relief pilot position was a demotion, other than Merkel's belief

regarding that position.

## PROCEDURAL BACKGROUND

Merkel and Defendants Pierce Aviation, Inc., James O. Pierce, and Kinney McKinney have

stipulated, under rule 41(a)(1) of the Federal Rules of Civil Procedure, that all claims in the complaint

against these three defendants are dismissed with prejudice.  The intent of the stipulation was to

terminate this action as to these three Defendants, but not to affect Merkel's claims against

Defendants Fernando Abeita and Nicholas Garcia.  On September 15, 2003, Abeita and Garcia moved

the Court to dismiss the proceedings against them based on qualified immunity.

## STANDARD OF REVIEW

The Individual Defendants filed their motion as one to dismiss this case, presumably pursuant to rule 12(b)(6), on the basis of qualified immunity.  A rule 12(b)(6) motion may be converted into a motion for summary judgment if matters outside the pleadings are considered.  See Miller v. Glanz, 948 F.2d 1562, 1565-66 (10th Cir. 1991).  Both parties attached declarations and other exhibits to the briefing on this motion.  The Court, therefore, finds it appropriate to consider this motion as one for summary judgment under rule 56.

Rule 56 allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must contradict facts that the movant specifically avers.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).  The court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried or where the moving party is not entitled to a judgment as a matter of law.  See Kennedy v. Silas Mason Co., 334 U.S. 249, 252 (1948).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. at 323.  The moving party can meet this burden by "pointing out to the court a lack of evidence as to an essential element of the non-movant's claim. The burden then shifts to the non-movant to present specific facts, admissible at trial, from which a rational trier of fact could find for the non-movant."  Bewley v. City of Duncan, 149 F.3d 1190 (table), 1998 WL 314382, *4 (10th Cir. 1998)(citing Fed. R. Civ.  P. 56(c); Celotex Corp. v. Catrett, 477 U.S. at 324).  The non-moving party may not rest on his pleadings but must set forth specific

facts.  See Applied Genetics Int'l v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

Under rule 56(e), only statements made with actual knowledge will support a motion for summary

judgment; the court must disregard statements of mere belief.  See Tavery v. United States, 32 F.3d

1423, 1427 n.4 (10th Cir. 1994)(citations omitted).

The court may grant summary judgment if the non-moving party's evidence is merely

colorable or is not significantly probative.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-51.

"In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on

speculation, or on suspicion, and may not escape summary judgment in the mere hope that something

will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry

is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc.,

477 U.S. at 251-52.

## QUALIFIED IMMUNITY LAW

The qualified immunity doctrine protects government officials performing discretionary

functions from liability for civil damages insofar as their actions did not violate "clearly established

statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982).

When a government official asserts the defense of qualified immunity, the burden shifts to the

plaintiff.  See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  Accordingly, "[t]he plaintiff

must first establish that the defendant's actions violated a constitutional or statutory right."  Id.

(internal quotation marks and citation omitted).  If the plaintiff establishes a violation of a

constitutional or statutory right, he must then demonstrate that the right at issue was clearly

-8-

established at the time of the defendant's unlawful conduct.  See id. (citing Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir.1995)).  In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  Medina v. Cram, 252 F.3d at 1128 (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)) (internal quotation marks omitted).  It is important, the Supreme Court has noted, that the second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier v. Katz,  533 U.S. 194, 201 (2001).  Thus, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.

"If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  Medina v. Cram, 252 F.3d at 1128 (quoting Albright v. Rodriguez, 51 F.3d at 1535) (internal quotation marks omitted).  In making this determination, the Court will view the evidence in the light most favorable to the non-moving party; however, the record must demonstrate that the plaintiff has satisfied his heavy two-part burden.  See Medina v. Cram, 252 F.3d at 1128.  Otherwise, the defendants' qualified immunity defense prevails. See Roberts v. Kling, 144 F.3d 710, 711 (10th Cir. 1998).

## LEGAL ANALYSIS

Merkel asserts that federal employees may "conspire" with a private employer and thereby be liable for the employer's alleged retaliation against the private employee's exercise of free speech rights. See Bivens v. Six Unknown Named Federal Agents, 403 U.S. 388 (1971).  But Garcia's and

Abeita's actions do not amount to a constitutional violation.  They are therefore entitled to qualified immunity.

I.    **THE <u>CONNICK V. MEYERS</u> AND <u>PICKERING</u> TESTS APPLY TO THE FIRST AMENDMENT CLAIM IN THIS CASE.**

The United States Court of Appeals for the Tenth Circuit has adopted a multi-tier test to analyze whether a public employer's actions impermissibly infringe on an employee's free speech rights.  <u>See</u> <u>Martin v. City of Del City</u>, 179 F.3d 882, 886 (10th Cir. 1999)(citing <u>Schalk v. Gallemore</u>, 906 F.2d 491, 494 (10th Cir. 1990)).  First, the Court must decide whether the speech at issue touches on a matter of public concern.  <u>See</u> <u>Connick v. Meyers</u>, 461 U.S. 138, 146 (1983). If it does, the Court must balance the employee's interest in making the statement against the employer's interest "in promoting the efficiency of the public services it performs through its employees."  <u>Pickering v. Board of Educ.</u>, 391 U.S. 563, 568 (1968).[3]  If the preceding prerequisites are met, the speech is protected, and the plaintiff must show his or her expression was a motivating factor in the detrimental employment decision.  <u>See</u> <u>Mount Healthy City School Dist. v. Doyle</u>, 429 U.S. 274, 287 (1977).  Finally, if the plaintiff sustains this burden, the employer can still prevail if it

---

[3]   The second step of the <u>Pickering</u> test for First Amendment retaliation is to balance the competing interests of the employee and the employer.

> *Pickering* directs us to consider a number of factors in balancing the competing interests at stake.  "[T]he manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." . . . Pertinent considerations include "whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."

<u>Wulf v. City of Wichita</u>, 883 F.2d 842, 861 (10th Cir. 1989)(quoting <u>Rankin v. McPherson</u>, 483 U.S. 378, 386-87 (1987)).

-10-

shows by a preponderance of the evidence that it would have made the same decision regardless of

the protected speech.  See id.  The first two questions of the Pickering test are questions of law, while

the latter two are questions of fact.  See Aiken v. Rio Arriba Bd. of County Comm'rs, 134 F. Supp.

2d 1216, 1219 (D.N.M. 2000)(Black, J.).  It is appropriate for the Court to apply the Pickering test

in the context of an action under Bivens v. Six Unknown Named Federal Agents.  See Rupp v.

Phillips, 15 Fed. Appx. 694, 697 (10th Cir. July 23, 2001)(affirming summary judgment in favor of

the defendant employer where district court used Pickering test in Bivens action).

## II.     MERKEL HAS NOT ESTABLISHED THE ELEMENTS OF A FIRST AMENDMENT CLAIM.

Consistent with the Court's ruling at the hearing on this motion, the Court does not believe

that Merkel has met his burden to establish any of these elements.  See Transcript of Hearing at 49-

54.  The Court will briefly discuss those elements.  Because, however,  the record is most clearly

deficient as to the third element of the Pickering test -- whether Merkel's speech was a motivating

factor in the Defendants' decisions about any actions against him -- the Court will limit its discussion

in this opinion to the third element.[4]

### A.     MERKEL HAS NOT ESTABLISHED THAT HIS COMMENT ABOUT A SAFECOM REPORT TOUCHES ON A MATTER OF PUBLIC CONCERN.

To determine whether speech touches on a matter of public concern, the Court must

determine whether it can "be fairly considered as relating to any matter of political, social, or other

concern to the community."  Connick v. Meyers, 461 U.S. at 146.  This examination requires analysis

---

[4] The fact that the Court is limiting its opinion to the third element should not be construed as indicating that the third element is the sole basis for granting this motion.  As noted at the hearing, the Court believes that there are a number of deficiencies in Merkel's case, any of which support the Court's decision to grant this motion.  See Transcript of Hearing at 48-55.

of the "content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48.  Courts have stated that, when the content of the speech focuses on disclosing public officials' malfeasance or wrongdoing, it is likely to be considered a matter of public concern.  See Lighton v. University of Utah, 209 F.3d 1213, 1224-25 (10th Cir. 2000);  Wulf v. City of Wichita, 883 F.2d at 857.  See also Koch v. City of Hutchinson, 847 F.2d 1436, 1445-46 & n.17 (10th Cir.)(en banc)("[M]any courts have particularly focused on the extent to which the content of the employee speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of governmental officials in the conduct of their official duties."), cert. denied, 488 U.S. 909 (1988).

Conversely, speech is generally not protected if the aim is simply to "air grievances of a purely personal nature."  Lighton v. University of Utah, 209 F.3d at 1225 (internal quotation marks and citation omitted).  It is not sufficient that the topic of the speech be of general interest to the public. What is actually said must be of public concern.  See Wilson v. City of Littleton, 732 F.2d 765, 769 (10th Cir.1984).

Merkel has focused solely upon his statement about possibly filing a Safecom report.  While anything perhaps could become a matter of press coverage and interest, a Safecom report seems primarily a document that is aimed at work place safety for employees, not a matter that goes to political or social concerns or to the safety of the public.  While a Safecom may show poor management, the Court does not believe it discloses the sort of malfeasance or wrongdoing that rises to the level of a matter of public concern.  A Safecom report seems to "air grievances of a purely personal nature."  Lighton v. University of Utah, 209 F.3d at 1225 (internal quotation marks and citation omitted).

But more important, it is not sufficient that a Safecom report, if filed, would be of general

interest to the public.  The more specific issue is whether the statement by one employee that he might file such a report would be a matter of public concern.  The Court does not think one such statement, in the midst of a dispute with a supervisor, satisfies the public concern requirement.

### B.   MERKEL HAS NOT DEMONSTRATED A GENUINE ISSUE OF MATERIAL FACT WHETHER HIS SPEECH WAS A SUBSTANTIAL MOTIVATING FACTOR IN THE EMPLOYER'S DECISION.

Assuming a plaintiff prevails on the first two factors of the <u>Pickering</u> test as a matter of law, the plaintiff must establish that his speech was a substantially motivating factor in the employer's decision.  The Court must look at the record and determine whether Merkel has established a genuine issue of material fact whether his speech was a motivating factor in the Defendants' decisions about and actions against him.   To be actionable as First Amendment retaliation, the decisions about and actions against Merkel must constitute "adverse actions."   As the Tenth Circuit stated in <u>Belcher v. City of McAlester, Oklahoma</u>, 324 F.3d 1203, 1207 n.4 (10th Cir. 2003):

> Implicit in the *Pickering* test is a requirement that the public employer have taken some adverse employment action against the employee.  *See Koch v. City of Hutchinson*, 847 F.2d 1436, 1440 (10th Cir. 1988) (noting that *Pickering* and its progeny "establish the basic framework for analyzing a claim by a public employee that his or her governmental employer made an *adverse employment decision* in violation of the employee's First Amendment rights."

(emphasis added)).

If Merkel establishes this element, the Defendants can prevail by showing that Pierce Aviation would have made the same employment decisions regarding Merkel in the absence of any actions on the part of the Defendants.

### 1.   Merkel has not Shown that Abeita and Garcia or the Other Defendants Committed an Adverse Employment Action.

First of all, it should be noted that Garcia and Abeita did not take any adverse employer action

-13-

against Merkel; if anyone took an adverse employment action against Merkel, it was the independent contractor, and Merkel's employer.  Moreover, to the extent Merkel's retaliation claims rest on his allegation that he was wrongfully discharged, the Court notes that Merkel has failed to establish that McKinney or Pierce Aviation discharged him.  The evidence in the record is that Merkel's employer gave him vacation time off and placed him on relief pilot duty.  The record does not support a finding that Pierce Aviation terminated Merkel, much less that the Individual Defendants did so.

Further, Merkel has offered no evidence that placing him on relief pilot duty or giving him vacation time constitutes a demotion, or another type of adverse action.  See Belcher v. City of McAlester, Oklahoma, 324 F.3d at 1207 n.4 ("If the action taken by the employer in response to the employee's speech is inconsequential or has only speculative consequences, there can be no basis for a First Amendment claim.").  Conduct is only adverse if it results in a significant change in employment status, or alters the employee's compensation, terms, conditions, or privileges of employment.  See Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531-32 (10th Cir. 1998)(("[W]e will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.")(internal quotation marks and citation omitted).  Merkel cannot, therefore, assert that the Defendants retaliated against him in these ways because the Defendants either did not take such actions (such as discharging him) or the allegations do not constitute actionable adverse actions (such as giving him vacation time and placing him on relief pilot duty).

Second, and most important, Merkel has pointed to no evidence in the record that Abeita or Garcia told Pierce about Merkel's statement that he might file a Safecom report; indeed, the evidence in the record is that Abeita did not tell Pierce about Merkel's statement.  See Abeita Decl. ¶ 13, at 7; Transcript of Hearing at 36:7 - 40:9.

-14-

**2.    There is no Evidence that Garcia or Abeita Told Anyone at Pierce Aviation About the Safecom Statement.**

Merkel alleges that the Defendants conspired with Pierce resulting in his termination or demotion.  Specifically, Merkel asserts that Abeita's phone discussion with Merkel's direct supervisor at Pierce Aviation constituted a conspiracy resulting in retaliation against him.  A conspiracy may constitute an adverse action.  In <u>Gallagher v. Neil Young Freedom Concert</u>, 49 F.3d 1442(10th Cir. 1995), a "symbiotic relationship" between the federal agents and private actors can lead to an adverse or state action.  If those agents "acted in concert in effecting a particular deprivation of Constitutional rights," then the action would be an adverse action.  <u>Id.</u> at 1453.

While a conspiracy may establish an adverse employment action, it is necessary that Merkel present the Court with evidence of a conspiracy.  As noted above, Merkel has not pointed to evidence in the record that anyone at Pierce Aviation had knowledge of Merkel's Safecom report statement. The Court cannot, therefore, conclude that there is evidence in the record to establish a genuine issue of material fact whether a conspiracy in fact occurred.  Thus, the Court does not believe Merkel has shown an adverse employment action by establishing the existence of a conspiracy.

**3.    Merkel Does Not Show a Causal Link Between the Safecom Statement and Any Adverse Employment Action.**

The most clear reason for granting the motion for summary judgment is that Merkel has not presented evidence that the Defendants' actions are causally related to his speech.  That there is no evidence of conspiracy and no evidence that McKinney was told of the Safecom statement precludes any finding of a genuine issue of material fact on the third element of the <u>Pickering</u> test.  Even assuming that Merkel was discharged or that any other of the Defendants' actions constituted actionable adverse actions, Merkel has not presented evidence that these actions were causally related

to his speech.  As noted above, there is no evidence of a conspiracy and, most important, no evidence that McKinney or anyone else at Pierce Aviation even knew about Merkel's statement regarding a Safecom report.

Merkel asserts that the temporal proximity of his speech and alleged retaliation supports a finding of causation.  The record establishes that McKinney gave Merkel vacation time and placed him on relief duty within 24 hours of his statement to the Defendants that he might file a Safecom report.  In First Amendment retaliation cases temporal proximity alone is not sufficient to establish that protected speech was a substantially motivating factor in an employer's adverse employment decision.  See Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 746 (10th Cir. 1999)("Plaintiff has not established that the speech was a motivating factor in his termination. The mere temporal proximity of Plaintiff's protected speech to his termination is insufficient, without more, to establish retaliatory motive.")(citing Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir.), cert. denied, 518 U.S. 1019 (1996); Love v. Re/Max of Am., Inc., 738 F.2d 383, 386 (10th Cir.1984)).  Merkel suggests no more than temporal proximity to establish that Pierce's actions were  causally related to his protected conduct.  See Transcript of Hearing at 40.  Merkel has not, therefore, established a genuine issue of material fact that his speech substantially motivated the Defendants' decisions about and actions against him.

    **4.**    **Merkel has not Created a Genuine Issue of Material Fact Whether the Defendants Would Have Acted Differently in the Absence of his Safecom Statement.**

Merkel has not presented evidence on the third factor of the Pickering test.  But, even if the Court were to assume that he has met this factor, the evidence is that the Defendants would have followed the same course of conduct in the absence of Merkel's speech.  The evidence in the record

is that Garcia and Abeita were concerned about Merkel's abusive language, yelling, and delays in flying his plane while a fire was burning.  Merkel has offered no evidence that the Defendants would have acted differently in the absence of his speech. Indeed, the only reasonable inference for the evidence in the record is that Garcia and Abeita would have proceeded in the same manner whether or not Merkel made any statement regarding filing a Safecom report.

The Court finds that Merkel has not met his burden under <u>Pickering</u> and has not established a genuine issue of material fact on his First Amendment retaliation claims.  Thus, there is no genuine issue of material fact whether the Defendants violated Merkel's constitutional rights, and they are, therefore, entitled to qualified immunity protection from this suit.  The Court will grant the Defendants' motion.

**IT IS ORDERED** that Defendants Abeita's and Garcia's Motion to Dismiss Based on Qualified Immunity is granted.  The claims against Defendants Fernando Abeita and Nicholas Garcia are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Steven K. Sanders
Law Offices of Steven K. Sanders
Albuquerque, New Mexico 87102-2212

     *Attorney for the Plaintiff*

David C. Iglesias
  United States Attorney
Raymond Hamilton

Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Defendants Fernando Abeita
and Nicholas Garcia*